UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GINETTE TCHAYA,

*Petitioner,*

v.

No. 03-1263

JOHN ASHCROFT,

*Respondent.*

On Petition for Review of an Order of the
Board of Immigration Appeals.
(A76-925-075)

Argued: June 2, 2004

Decided: August 5, 2004

Before MICHAEL, TRAXLER, and GREGORY, Circuit Judges.

---

Petition for review denied by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** David Laundon Cleveland, CATHOLIC CHARITIES, Washington, D.C., for Petitioner. Barry Pettinato, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Senior Litigation Counsel, Elise M. Faber, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Ginette Tchaya, a native and citizen of Cameroon, entered the United States in 1999 on a temporary non-immigrant visa. She overstayed her visa and conceded that she was removable under 8 U.S.C.A. § 1227(a)(1)(B) (West 1999 & Supp. 2004). The immigration judge denied Tchaya's application for political asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT), and entered an order of removal. The Board of Immigration Appeals (BIA) dismissed her administrative appeal. We now deny Tchaya's petition for review of the BIA's decision.

I.

A.

The Immigration and Nationality Act (INA) gives discretionary authority to the Attorney General to confer asylum on any refugee. *See* 8 U.S.C.A. § 1158(a) (West 1999). The INA defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West 1999). The "well-founded fear of persecution" standard contains subjective and objective elements. "An applicant may satisfy the subjective element by presenting candid, credible, and sincere testimony demonstrating a genuine fear of persecution." *Chen v. INS*, 195 F.3d 198, 201 (4th Cir. 1999) (internal quotation marks omitted). In order to meet the objective requirement, the applicant must show "specific, concrete facts" that would lead "a reasonable person in like circumstances [to] fear persecution." *Id.* at 202. The applicant, not the government, bears the burden of proving her refugee status. *See* 8 C.F.R. § 1208.13(a) (2004); *Gonahasa v. INS*, 181 F.3d 538, 541 (4th Cir. 1999).

To qualify for withholding of removal, an applicant must demonstrate by objective evidence "a clear probability of persecution upon deportation." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987) (internal quotation marks omitted). The relief afforded by withholding of removal is not as broad as asylum. Unlike an asylee, an alien entitled to withholding of removal is not thereby entitled to remain in the United States; rather, withholding of removal simply prevents the alien from being removed to the specific country or countries where it is more likely than not that the persecution will occur. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999). The standard for withholding removal is more stringent than for asylum. *See Chen*, 195 F.3d at 205. Thus, the failure to establish eligibility for asylum necessarily results in the failure to establish eligibility for withholding of removal. *See id.* However, if an alien establishes eligibility for withholding of removal, it is a mandatory remedy. *See Aguirre-Aguirre*, 526 U.S. at 420.

In implementing Article 3 of the CAT, Congress declared that

> [i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.

Omnibus Consol. Approp. Act, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-822 (1998). For purposes of the CAT, torture is defined as "an extreme form of cruel and inhuman treatment" involving severe physical or mental pain and suffering. 8 C.F.R. § 208.18(a)(1) & (2) (2004). Regulations implementing the CAT require that an alien seeking relief under the CAT demonstrate "that it is more likely than not that he or she would be tortured if returned to the proposed country of removal." *Perinpanathan v. INS*, 310 F.3d 594, 599 (8th Cir. 2002); *Wang v. Ashcroft*, 320 F.3d 130, 133-34 (2d Cir. 2003); *see* 8 C.F.R. § 208.16 (c)(4)(2004).

### B.

Tchaya based her application for relief from the order of removal upon three incidents in which she claims to have been detained and

mistreated by the government of Cameroon on account of her political activity. At her asylum hearing, Tchaya testified that the first of these incidents occurred in 1991. According to Tchaya, in 1991 she became involved in the Social Democratic Front (SDF), an opposition party to the government, but she did not become a formal member until 1997. She testified that in 1991, she was arrested while participating in an SDF activity and held over night, during which time she was beaten. Tchaya testified that she sustained injuries, but that she did not seek medical attention at a hospital for fear of reprisal.

Tchaya testified that her next arrest occurred during the presidential election in October 1997 while she was attending an SDF rally against the government. On this occasion, Tchaya was questioned about her activities, beaten, and released after approximately eight hours. Tchaya testified that these beatings resulted in wounds on her knees, feet and back. Tchaya sought medical care from a hospital a few days after her release, where she was treated and released.

According to Tchaya's testimony, the third and final arrest came in February 1999, upon her return to Cameroon from a vacation in the United States. Tchaya indicated that, at the end of 1998, she hosted some meetings for SDF leaders to secretly plan demonstrations against the government. Government agents entered her home, Tchaya claimed, and arrested her when they discovered some unused, written invitations for these SDF meetings. Tchaya testified that she was detained for three days, during which time she was purportedly interrogated about her party affiliation, beaten and raped by her captors. Tchaya indicated that family members and friends ultimately bribed a guard for her release, after which she was examined by a doctor.

Tchaya testified that between her first arrest in 1991 and her final arrest in February 1999, she traveled to the United States as a tourist on vacation three times — in October 1995, October 1996, and February 1999 — always voluntarily returning to Cameroon instead of seeking asylum in the United States. Tchaya indicated that she "didn't see any reason why [she] should ask for political asylum because at that time [her] life was not threaten[ed]." J.A. 49.

Following her February 1999 arrest, Tchaya returned immediately to the United States. Although she claimed she was fleeing Camer-

oon, Tchaya did not apply for asylum until November 2000 — well over one year after entry and three months after the Immigration and Naturalization Service (INS) served her with a Notice to Appear for overstaying her visa.

In support of her application, Tchaya submitted a copy of her 1998 SDF card and a sworn verification from an SDF official that the card was valid. Tchaya also offered an unsigned, typed statement that was purportedly from her sister. The document provided some corroboration for Tchaya's claim that she was active in the SDF, that she was arrested for engaging in anti-government activities, that her last arrest occurred after returning from the United States, and that the family bribed officials to secure Tchaya's release. The document did not mention the alleged rape or the necessity for medical care after release.

Tchaya also submitted government medical forms in support of her claim. She was examined in October 1997 for injuries received by government forces, resulting in "serious injuries on the knee" and "hematomas on the back." J.A. 149. She was also examined in February 1999 after the alleged rape. The examining physician indicated that Tchaya "declared that she was physically abused" by the government and exhibited "bruises and ecchymosis caused by a sharp object, along with contusions on the entire body" as well as "[d]ryness of the mucous membrane and skin due to dehydration." J.A. 147. The doctor noted that Tchaya "also stated that she was sexually abused." J.A. 147. Tchaya testified that, even as of the time of the hearing, she was suffering nightmares from her traumatic arrest and that she was living with a friend of her sister. Although this friend was supposedly aware of the nightmares, she did not appear to testify. Tchaya had not sought counseling to deal with the apparent trauma of her last arrest.

Finally, Tchaya presented the testimony of a political asylee from Cameroon who testified that he was an officer and active member for the SDF in North America. He testified that Tchaya attended SDF rallies in the United States. However, the purported SDF official did not produce any identification showing that he was in fact a member of the SDF.

C.

The immigration judge rendered an oral decision, concluding that Tchaya, who based her claim on three separate arrests by government forces, failed to establish past persecution or a well-founded fear of persecution. The immigration judge pointed to the fact that Tchaya traveled to the United States after each of her first two arrests, did not seek asylum, and voluntarily returned to Cameroon after each visit. Even after the third arrest, when the rape allegedly occurred, Tchaya did not seek asylum for nearly two years after arriving in the United States.

The immigration judge noted several other factors that undercut Tchaya's allegations of abuse while under arrest. For example, the immigration judge noted that the document purporting to be a letter from Tchaya's sister did not reference the alleged rape or any severe physical abuse at all during Tchaya's last arrest. With respect to the medical report, the immigration judge observed that the doctor's statement merely repeated Tchaya's own statement that she had been sexually abused; it did not indicate (or negate) sexual abuse based on the physical examination. The doctor also made no mention of vaginal and anal tears that Tchaya claimed to have suffered. The immigration judge concluded that there was insufficient evidence to corroborate Tchaya's story of sexual abuse in connection with her final arrest before coming to the United States. In sum, the judge concluded that Tchaya simply failed to carry her burden of establishing eligibility for asylum, withholding of removal or relief under the CAT.

Tchaya appealed the immigration judge's decision to the BIA. The BIA dismissed the appeal in summary fashion, concluding that "[t]he Immigration Judge's decision accurately sets forth the facts asserted by the respondent . . . in support of her applications for relief and correctly concludes that the respondent has failed to establish persecution or a well-founded fear of future persecution on account of one of the five [statutory] grounds." J.A. 280.

II.

Our review of an administrative decision to deny asylum is limited. A determination of eligibility for asylum or withholding of removal

is conclusive "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks omitted). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C.A. § 1252(b)(4)(B) (West 1999). Thus, this court will reverse the denial of an asylum application only if the evidence "was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Rusu v. INS*, 296 F.3d 316, 325 n.14 (4th Cir. 2002) (internal quotation marks omitted). Although this court ordinarily applies this standard to the order of the BIA instead of the immigration judge, we will treat an order of the immigration judge as essentially that of the BIA where the BIA relies on the reasoning of the immigration judge in a summary affirmance. *See Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1255 (4th Cir. 1995); *see also Chen v. INS*, 87 F.3d 5, 8 n.3 (1st Cir. 1996) ("Where . . . the Board adopts the findings and conclusions of the IJ, the IJ's rescript serves de facto as the Board's articulation of its *ratio decidendi*."). Because the BIA summarily affirmed the decision of the immigration judge, we apply our standards of review to the oral decision rendered by the immigration judge.

Tchaya argues that the immigration judge's factual determination that she failed to establish past persecution or a well-founded fear of future persecution was erroneous. Specifically, Tchaya claims that the immigration judge was required to accept her testimony as true because the immigration judge did not make an explicit adverse credibility determination. Thus, contends Tchaya, the immigration judge had no basis for requiring additional corroboration of Tchaya's testimony about the prison abuse she suffered. We disagree.

Credibility findings are reviewed for substantial evidence, but a factfinder who rejects an applicant's testimony on credibility grounds "should offer a specific, cogent reason for his disbelief." *Figeroa v. INS*, 886 F.2d 76, 78 (4th Cir. 1989) (internal quotation marks and alterations omitted). The relevant regulations provide that the alien does not necessarily need to corroborate his testimony in order to carry his burden of proving eligibility for asylum: "The testimony of the applicant, if credible, *may* be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a) (emphasis

added). Citing this regulation, Tchaya suggests that in the absence of an explicit factual finding by the immigration judge that the alien's testimony was not credible, we must accept the alien's testimony as true — meaning corroboration of the facts testified to cannot be required. The Ninth Circuit indeed follows such an approach. *See Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir. 1994); *see also Ladha v. INS*, 215 F.3d 889, 901 n.12 (9th Cir. 2000).

We find no support in the regulations or our decisions for the proposition that an alien's testimony must be taken as true unless the immigration judge explicitly states that he does not find the testimony to be credible. *See Disu v. Ashcroft*, 338 F.3d 13, 16 (1st Cir. 2003) (affirming denial of asylum where "IJ did not explicitly say that [the alien] lacked credibility but plainly did doubt his testimony"); *Abdulai v. Ashcroft*, 239 F.3d 542, 551 n.6 (3d Cir. 2001) (noting that the Third Circuit does not follow such a rule). It is clear that the immigration judge implicitly found Tchaya's testimony to lack credibility and provided "specific, cogent" reasons for questioning her credibility. *Figeroa*, 886 F.2d at 78. The immigration judge questioned the claimed severity of her mistreatment in jail in light of the fact that Tchaya vacationed in the United States and voluntarily returned to Cameroon without seeking asylum three separate times after her first two arrests; that she did not seek asylum quickly upon her final entry into the United States, but instead waited eighteen months to do so; that Tchaya's examining doctor did not provide any independent medical verification of the extremely severe injuries claimed by Tchaya, such as vaginal and anal tearing; and that Tchaya's sister provided a letter stating that Tchaya had been arrested in February 1999, but omitting any mention of the alleged rape.

Furthermore, even if we assumed that Tchaya's testimony was generally credible, that does not necessarily lead to the conclusion that she has established a well-founded fear of persecution without the need for corroboration. Indeed, such an argument runs counter to the BIA's interpretation of its own regulations. The BIA has interpreted 8 C.F.R. § 1208.13 to mean that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided." *In re S-M-J-*, 21 I. & N. Dec. 722, 725-26 (BIA 1997) (en banc); *see Kayembe v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003) (approving of

BIA's interpretation); *Abdulai*, 239 F.3d at 554 (same). Tchaya challenges neither the regulation itself nor the BIA's interpretation of it. In this case, because Tchaya in fact provided some corroborative evidence, it was reasonable for the immigration judge to expect it. Tchaya's problem was that her evidence actually undermined rather than bolstered her claim regarding the extent of her mistreatment in February 1999.

We conclude that substantial evidence supports the immigration judge's denial of asylum. Viewing the record as a whole, we cannot say that the evidence that Tchaya was unable or unwilling to return to her country because of a well-founded fear of persecution "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias*, 502 U.S. at 483-84. In addition to the insufficient corroboration of Tchaya's alleged mistreatment, Tchaya failed to seek asylum even after arrests that included ostensibly abusive treatment, and even upon her last entry into the United States, Tchaya failed to seek asylum until it was discovered that she overstayed her visa by more than a year and a half. Moreover, Tchaya's sister, in whose house the secret SDF meetings were supposedly held, remains in Cameroon where she has not been arrested or bothered by authorities.

The denial of Tchaya's request for withholding of removal, the standard for which is more stringent than for asylum, is likewise supported by substantial evidence. The evidence is not so compelling that any reasonable factfinder could not fail to find "a clear probability of persecution," were Tchaya to return to Cameroon. *Cardoza-Fonseca*, 480 U.S. at 430 (internal quotation marks omitted). Because Tchaya failed to establish eligibility for asylum, we conclude she has failed to establish eligibility for withholding of removal. *See Chen*, 195 F.3d at 205.

Finally, we conclude that there is substantial evidence to support the decision of the immigration judge deny relief pursuant to the CAT. As discussed above, Tchaya failed to sufficiently corroborate her claim of past abuse that would qualify as extremely inhumane physical or mental abuse. *See* 8 C.F.R. § 208.18(a). Tchaya has failed to point to evidence demonstrating that it is "more likely than not that . . . she would be tortured if returned to the proposed country of

removal." *Perinpanathan*, 310 F.3d at 599. Thus, we reject this claim as well.

### III.

While her administrative appeal was pending before the BIA, Tchaya filed with the BIA a motion to reopen based on new evidence. The new evidence submitted to the BIA included a new medical report. Unlike the medical report submitted at the hearing, which was apparently created contemporaneously with Tchaya's release from jail in February 1999, this new report was created on May 8, 2001, after the immigration judge denied Tchaya's claim and after Tchaya realized her original medical report was not sufficiently convincing to the immigration judge. Even so, the new report still lacked medical verification of her claim that she was raped, merely repeating the allegations as recounted by Tchaya. Tchaya also submitted an affidavit from a social worker, also dated after the asylum hearing, indicating, based on an interview during which Tchaya told her story, that Tchaya had symptoms common to those reported by victims of rape and torture. Finally, she submitted an additional letter from her sister, which included a purported summons issued in August 2001, also while Tchaya's administrative appeal was pending, ordering Tchaya to appear in the High Court of Douala for unspecified breaches of the public peace at an undated time. The BIA denied the motion to reopen, concluding that "the material submitted [does not] warrant[ ] a grant of the motion, as we find none of the material would alter our affirmance of the result of the Immigration Judge's decision." J.A. 280.

"Motions to reopen immigration proceedings are disfavored, particularly in deportation proceedings, where 'every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" *Stewart v. INS*, 181 F.3d 587, 595 (4th Cir. 1999) (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)). Thus, our review of the BIA's denial of a motion to reopen "is extremely deferential," and we will reverse only for an abuse of discretion. *Id.* In this context, we must affirm the denial of a motion to reopen unless the BIA denied it "without a rational explanation," "departed from established policies," or rested the denial on "an impermissible basis." *M.A. v. INS*, 899 F.2d 304, 310 (4th Cir. 1990) (en banc).

Having reviewed the record and the additional evidence submitted by Tchaya in support of her motion to reopen the proceedings, we conclude that the BIA did not abuse its discretion in denying Tchaya's motion to reopen.

IV.

For the foregoing reasons, we deny Tchaya's petition to review the BIA's decision affirming the denial of asylum, withholding of removal, and relief under the CAT. We further deny Tchaya's petition to review the BIA's denial of her motion to reopen.

*PETITION FOR REVIEW DENIED*