**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-1031**

---

YAN DAN LI,

Petitioner,

versus

ALBERTO R. GONZALES, Attorney General,

Respondent.

---

On Petition for Review of an Order of the Board of Immigration
Appeals.  (A77-977-373)

---

Argued:  January 31, 2007                Decided:  March 15, 2007

---

Before WILKINS, Chief Judge, and WILLIAMS and DUNCAN, Circuit
Judges.

---

Petition for review granted; vacated in part and remanded by
unpublished per curiam opinion.

---

**ARGUED:** S. Vanessa von Struensee, Arlington, Virginia, for
Petitioner.  James Arthur Hunolt, UNITED STATES DEPARTMENT OF
JUSTICE, Office of Immigration Litigation, Washington, D.C., for
Respondent.  **ON BRIEF:** Peter D. Keisler, Assistant Attorney General,
Civil Division, Sara Ann Ketchum, Tax Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Yan Dan Li, a native of the People's Republic of China (PRC), petitions for review of the order of the Board of Immigration Appeals (BIA) denying her applications for asylum under 8 U.S.C.A. § 1158(b) (West 2005 & Supp. 2006), withholding of removal under 8 U.S.C.A. § 1231(b)(3) (West 2005 & Supp. 2006), and protection under the United Nations Convention Against Torture (CAT). Li contends, inter alia, that the immigration judge (IJ) denied her asylum and withholding of removal applications based on an improper application of the "corroboration rule," under which an asylum applicant may be required to present evidence corroborating her testimony even when that testimony is deemed credible. Because the IJ, in assessing Li's applications for asylum and withholding of removal, did not explain why corroboration of Li's testimony was required, we remand to allow the IJ to provide such an explanation. We also hold that the IJ's denial of Li's application for protection under the CAT was supported by substantial evidence because Li cannot show that it is more likely than not that she would be tortured upon return to the PRC. Accordingly, we grant Li's petition for review, vacate in part the BIA's order, and remand.

I.

Li was born on December 20, 1977, in Fuzhou City, Fujian province, China. Before leaving to come to the United States, she

lived with her parents and worked at a fashion boutique in their village. Li has two brothers who continue to live with her parents and a married sister who also lives in the Fuzhou City area.

Li left China in the summer of 2001 after her family paid a "snakehead"[1] to secure her passage from China to the United States, and she arrived in the United States a few months later. Within a year of her arrival, Li married Tak Yan Cheng, a United States citizen, on June 3, 2002.[2]

On October 5, 2001, the Immigration and Naturalization Service (now reorganized within the Department of Homeland Security) issued

---

[1] A "snakehead" is a smuggler who transports Chinese immigrants from China to the United States and other countries. See Zheng v. Ashcroft, 332 F.3d 1186, 1189 (9th Cir. 2003).

[2] In January 2006, Li filed an application for adjustment of status based on her marriage to a United States citizen. Under 8 C.F.R. § 1245.1(c)(8), an arriving alien who is in removal proceedings is barred from adjusting status. 8 C.F.R. § 1245.1(c)(8) (2006). In a letter submitted after briefing pursuant to Federal Rule of Appellate Procedure 28(j), Li notified us that four courts of appeals have struck down 8 C.F.R. § 1245.1(c)(8) and that an interim rule has been promulgated that will do away with the absolute bar on an arriving alien's ability to adjust status while in removal proceedings. Li filed a motion to reconsider with the BIA based on this argument, but the BIA denied the motion. Li, however, did not file a petition for review of the BIA's denial of her motion to reconsider and did not challenge the validity of 8 C.F.R. § 1245.1(c)(8) in her opening brief. Because Li did not present this issue in her opening brief, and because the argument about the regulation's validity was available to her at the time she filed her brief, we decline to pass on the validity of the regulation in this appeal. See United States v. Leeson, 453 F.3d 631, 638 n.4 (4th Cir. 2006)("[C]onsidering an argument advanced for the first time in a Rule 28(j) filing is not only unfair to the appellee, it also creates the risk of an improvident or ill-advised opinion being issued on an unbriefed issue.").

Li a Notice to Appear charging her with being subject to removal pursuant to 8 U.S.C.A. § 1182(a)(7)(A)(i)(I) (West 2005 & Supp. 2006). Li conceded removability and sought asylum, withholding of removal, and protection under the CAT.

According to her testimony at her removal hearing, Li left China because she faced arrest for her refusal to marry the "village head," a local government official. Li testified that on January 6, 2001, the village head came to her parents' home and proposed to her. Knowing that Li had no interest in marrying a man nearly twenty years her senior, Li's parents immediately rejected the village head's proposal on her behalf. In response, the village head arrested Li's mother and jailed her for two to three weeks for practicing Falun Gong,[3] destroyed her parents' furniture, and threatened to arrest Li. Li testified that she had heard of other girls being forced to marry local government officials under threat of incarceration or destruction of family property, although she could not recount any details of these incidents. As a result of

---

[3]"Falun Gong is an international movement, though primarily Chinese, that is often referred to as a 'religion' (or, by its critics, as a 'cult'), though it is not a religion in the Western sense. Like other Asian 'religions,' such as Buddhism and Confucianism- on both of which Falun Gong draws- there is no deity. The emphasis is on spiritual self-perfection through prescribed physical exercises; in this respect the movement has affinities with traditional Chinese medicine." Iao v. Gonzales, 400 F.3d 530, 532 (7th Cir. 2005). The Chinese government has made the practice of Falung Gong unlawful. "As Falun Gong is neither theistic nor, so far as appears, political, the ferocious antipathy to it by the Chinese government - that government's determination to eradicate it root and branch - is mysterious, but undeniable." Id.

4

these acts of retaliation, Li testified that she briefly went into hiding in a classmate's home in a neighboring village. When asked what she thought would happen to her upon return to China, Li responded, "I . . . will be sent into the jail . . . . because [the village head will] accuse me that I was a member of Falun Gong and I left China illegally." (S.A. at 77.)[4]

In response to Li's testimony, the IJ questioned her about her failure to provide evidence corroborating her testimony. Specifically, the IJ focused on Li's failure to produce any letters from her family members and classmate to substantiate her claims of retaliation against her family. When the IJ asked Li why she had not come with letters from her family in hand, Li responded that she did not know that such letters were needed, but that she could ask for letters if necessary.

In an oral decision, the IJ denied Li's asylum application. While the IJ made passing references that implied doubt about Li's credibility, the IJ did not make an explicit finding that Li's testimony was not credible. Instead, in denying Li's asylum application, the IJ focused on her failure to provide corroborating evidence in the form of letters from her family and friends. Concerning Li's claim of fear of future persecution, the IJ stated that there was a "singular lack of corroborating documentation and evidence in this case" (J.A. at 39), noting that "[Li] could've

_____

[4]"S.A." refers to the Supplemental Appendix. "J.A." refers to the Joint Appendix.

5

asked for some type of corroborating documentation by way of affidavits or even letters" that "very curiously" were not forthcoming from her family, (J.A. at 40). The IJ repeatedly stated that Li had produced "no evidence" that corroborated her testimony and found that her claim of fear of future persecution was undercut by the fact that her family remained in the same town where the village head resides, apparently unharmed. The IJ rejected as "not satisfactory" Li's explanation that she did not know such corroboration was needed. (J.A. at 40.) Because of her determination that Li could not demonstrate the threshold well-founded fear of persecution necessary for asylum, the IJ did not reach the question of Li's membership in a particular social group. The IJ then concluded that Li was necessarily ineligible for withholding of removal given her ineligibility for asylum and held that Li was not entitled to protection under the CAT because she had not produced any evidence showing that it was more likely than not that she would be tortured upon return to the PRC. Li appealed, and the BIA summarily affirmed and adopted the IJ's decision in a written opinion, briefly discussing the bases for the IJ's decision. On January 6, 2006, Li filed a petition for our review of the BIA's final order of removal. We have jurisdiction pursuant to 8 U.S.C.A. § 1252 (West 2005 & Supp. 2006).

6

An alien seeking asylum must demonstrate that she is unable or unwilling to return to her country of origin because of persecution, or a well-founded fear of persecution, on account of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C.A. § 1101(a) (West 2005 & Supp. 2006). An alien seeking withholding of removal bears a higher burden of proof: she must demonstrate that "it is more likely than not" that she would be persecuted if removed to the proposed country of removal. INS v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987).

The BIA's decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law. 8 U.S.C.A. § 1252(b)(4)(C). We review the BIA's administrative findings of fact under the substantial evidence rule: we must treat them as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C.A. § 1252(b)(4)(B); INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)(stating that an appellate court must uphold the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole" (internal quotation marks omitted)). Of course, we review de novo legal questions determined by the BIA, Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 278 (4th Cir. 2004), affording appropriate deference to the BIA's interpretation of the Immigration and Naturalization Act

and any attendant regulations, <u>Christensen v. Harris County</u>, 529 U.S. 576, 586-88 (2000)(stating that <u>Chevron</u> deference should be afforded to an agency's interpretation of an ambiguous statute and <u>Auer</u> deference to an agency's interpretation of its own regulation). Because the BIA adopted the IJ's decision and briefly discussed some of the bases for that decision, we review both the IJ's decision and the additional reasoning supplied by the BIA in its written order. <u>See</u> <u>Gandarillas-Zambrana v. BIA</u>, 44 F.3d 1251, 1255 (4th Cir. 1995); <u>Chen v. Ashcroft</u>, 376 F.3d 215, 222 (3d Cir. 2004)("[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA.").

B.

While Li makes multiple challenges to the IJ's denial of her applications for asylum and withholding of removal, Li's most compelling argument is that the IJ denied her a fair and meaningful hearing by misapplying the so-called "corroboration rule" to deny her asylum application for lack of corroborating evidence, without first making an explicit credibility finding about her testimony and without adequately explaining why corroboration was required. The corroboration rule is based on the BIA's interpretation of 8 C.F.R. § 208.13(a) (2006), which provides, in pertinent part, that for purposes of establishing eligibility for asylum, "[t]he testimony of the applicant, if credible, may be sufficient to sustain [her]

8

burden of proof without corroboration." Id. "Although on its face this regulation establishes a condition under which corroboration is not necessary," Gontcharova v. Ashcroft, 384 F.3d 873, 876 (7th Cir. 2004), the BIA has interpreted the phrase "may be sufficient" to mean that an applicant's credible testimony will not always be sufficient to meet her burden of proof, see In re S-M-J, 21 I & N. Dec. 722, 725 (BIA 1997)(stating that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided").

The corroboration rule is relevant only if the applicant's testimony is otherwise credible. Li contends that because the IJ did not make an express adverse credibility finding about her testimony, it must be accepted as credible. We agree and conclude that there is a presumption of credibility when an IJ fails to make an explicit adverse credibility finding.[5] See, e.g., Kalubi v. Ashcroft, 364 F.3d 1134, 1137 (9th Cir. 2004)("Testimony must be accepted as true in the absence of an explicit adverse credibility finding."); Canales-Vargas v. Gonzales, 441 F.3d 739, 741 n.1 (9th Cir. 2006)(same). This presumption is in harmony with Congress's

---

[5]In an unpublished opinion, Tchaya v. Ashcroft, 106 F. App'x 174, 179 (4th Cir. 2004)(unpublished), we previously rejected a presumption of credibility when an IJ does not make an explicit adverse credibility finding. See id. (rejecting the contention that a presumption of credibility exists when no adverse credibility determination is made). Because unpublished opinions are not binding precedent within this circuit, see Local Rule 36(c), we are not bound to follow the Tchaya court's reasoning.

9

amendments in the REAL ID Act of 2005, Pub. L. No. 109-13, §
101(a)(3)(B)(iii), 119 Stat. 302, 303 (2005). While not applicable
to Li's case, the Act amended 8 U.S.C.A. § 1158(b) so that the
statute now provides that "if no adverse credibility determination
is explicitly made, the applicant or witness shall have a rebuttable
presumption of credibility on appeal." 8 U.S.C.A. §
1158(b)(1)(B)(iii).

Some of the IJ's statements at Li's removal hearing strongly
implied doubt about Li's credibility. (See, e.g., J.A. at 40 ("[Li]
could've asked . . . for some type of corroborating documentation
. . . . But, very curiously, there has been absolutely nothing
forthcoming from the family.").) Indeed, the IJ's focus on Li's
failure to provide corroborating evidence suggests that the IJ
questioned the veracity of Li's testimony about the village head's
treatment of her family subsequent to his marriage proposal to Li.
Moreover, the IJ assumed that Li's testimony did not count as
"evidence" of her plight, as she repeatedly stated that Li had
presented "no evidence" that she or her family has suffered any
maltreatment at the hands of the village head. While these
statements easily lead to the inference that the IJ was skeptical
of Li's testimony, they do not amount to an explicit adverse
credibility finding. For an IJ's credibility finding to be
explicit, the IJ must state in no uncertain terms that he finds that
the applicant's testimony is or is not credible; "a passing
reference implying doubt about an applicant's credibility" simply

will not do. Diallo v. Gonzales, 439 F.3d 764, 766 (7th Cir. 2006); see also Nakibuka v. Gonzales, 421 F.3d 473, 479 (7th Cir. 2005)(holding that an IJ failed to make an explicit credibility finding even though he remarked that the applicant's testimony was "vague and confusing" as well as "exaggerated"). Because the IJ did not make an explicit adverse credibility finding, we presume Li's testimony to be credible and turn to the application of the corroboration rule.

C.

Although the BIA's interpretation of 8 C.F.R. § 208.13(a) -- i.e., that an applicant's testimony alone will not always be sufficient to meet her burden of proof -- is worthy of deference, see Auer v. Robbins, 519 U.S. 452, 461 (1997)(stating that courts must defer to an agency's interpretation of its own regulation, treating that interpretation as "controlling unless plainly erroneous or inconsistent with the regulation." (internal quotation marks omitted)), that interpretation does not necessarily spell victory for the Government in this case. An IJ must still explain why corroboration is required in a given case, lest the regulation's pronouncement that an applicant's testimony alone may be sufficient to meet her burden of proof be rendered meaningless. It is clear in Li's case that the IJ did not explain why Li should have provided corroboration of her testimony.

11

While the IJ asked Li several times if she had asked her family members and friends for letters to substantiate her testimony, the IJ never explained why such letters were necessary for Li to meet her burden of proof. Instead, in ruling on whether Li had established a well-founded fear of future persecution, the IJ simply stated that "there was a singular lack of corroborating documentation and evidence in this case." (J.A. at 39.) While this statement may well reveal that the IJ simply did not believe Li's testimony, it does not amount to an explanation of why corroboration was required in her case. In fact, because the IJ failed to make an explicit adverse credibility finding, it is unclear from the IJ's decision whether the IJ required corroboration because she did not believe Li or because the IJ determined that such corroboration was necessary for Li to meet her burden of proof despite her testimony being credible. We therefore remand this matter to the BIA because the IJ denied Li's asylum application for failure to provide corroborating evidence without explaining why such corroboration was needed, thus making it difficult, nigh impossible, for us to conduct our already-circumscribed review of the IJ's decision.[6] Because the IJ denied Li withholding of removal based on her earlier analysis of Li's asylum application, we remand with respect to Li's application for withholding of removal as well.

---

[6]On remand, of course, the IJ also retains the discretion to make an explicit credibility determination in the first instance, notwithstanding our invocation of a presumption of credibility.

12

III.

Li also contends that the IJ erred in denying her application for protection under the CAT.  CAT claims are analytically distinct from asylum and withholding claims and are judged under a different standard.  Camara v. Ashcroft, 378 F.3d 361, 371-72 (4th Cir. 2004).  An applicant for protection under the CAT bears the burden of establishing "that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2) (2006); Camara, 378 F.3d at 371.

We conclude that substantial evidence supports the IJ's denial of Li's application for protection under the CAT.  Li did not produce any evidence before the IJ that suggests that she would be tortured upon removal to the PRC.  While Li's mother was arrested and jailed for her practice of Falun Gong, there is no indication that her mother was tortured while she was detained.  We therefore find no error in the IJ's denial of Li's CAT application.

IV.

Finally, Li invites us to hold that she is a member of a "particular social group" as that phrase is used in 8 U.S.C.A. § 1101(a)(42), namely, that her statutorily cognizable group is comprised of "young Chinese women who oppose forced, coerced or involuntary marriages."  (Appellant's Br. at 16-17.)  We must decline this invitation.

13

Because the IJ determined that Li had not demonstrated a well-founded fear of persecution, she never reached the question of Li's membership in a particular social group. Under the so-called "ordinary remand" rule, "[a] court of appeals is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." Gonzales v. Thomas, 126 S. Ct. 1613, 1614-15 (2006)(per curiam)(internal quotation marks omitted). Instead, the appropriate course, "except in rare circumstances, is to remand to the [BIA] for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002)(per curiam)(internal quotation marks omitted). This is not the "rare" case spoken of in Ventura.

V.

For the foregoing reasons, we grant Li's petition for review of the BIA's final order of removal. We vacate in part the BIA's order because the IJ misapplied the corroboration rule with respect to Li's applications for asylum and withholding of removal. On the other hand, we affirm that portion of the BIA's order relating to Li's application for relief under the CAT. We remand to the BIA for such further proceedings as may be appropriate.

PETITION FOR REVIEW GRANTED; VACATED IN PART AND REMANDED

14