**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

YONG HAO CHEN,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-2005

On Petition for Review of an Order of the
Board of Immigration Appeals.
(A72-379-186)

Argued: September 24, 1999

Decided: October 20, 1999

Before WIDENER and MOTZ, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Widener and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Lawrence H. Rudnick, STEEL, RUDNICK & RUBEN,
Philadelphia, Pennsylvania, for Petitioner. Norah Ascoli Schwarz,
Senior Litigation Counsel, Office of Immigration Litigation, Civil
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Respondent. **ON BRIEF:** Beverly Yeskolski,
HYDER, LOWE & GALSTON, Norfolk, Virginia, for Petitioner.

Frank W. Hunger, Assistant Attorney General, Francesco Isgro, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Yong Hao Chen, a citizen of the People's Republic of China (China), petitions for review of a final order of the Board of Immigration Appeals denying his application for asylum and withholding of deportation. Chen maintains that he is entitled to refugee status because he has a well-founded fear, based on China's "one child" population control program, of being subjected to an involuntary sterilization procedure, or of being persecuted for a refusal to undergo such a procedure. The Board held that Chen's fears are not well-founded. Because substantial evidence supports the Board's decision, we affirm.

I.

Yong Hao Chen came to the United States on a student visa in September 1990 to study at Old Dominion University. After Chen was seriously injured in a work-related accident, Chen's wife, Wei Kai Li, joined him in Virginia in 1991. Chen's student visa expired in 1994. On July 2, 1996, the Immigration and Naturalization Service (INS) issued orders requiring Chen and Wei Kai Li to show cause for their failure to comply with the terms under which they were admitted to the country. Deportation proceedings before an immigration judge followed, at which both Chen and Wei Kai Li testified.

According to their testimony, Chen and Wei Kai Li have two children, and Chen also has an older child from his first marriage. Chen and Wei Kai Li's first child, who now lives with Wei Kai Li's mother in China, was born in Shanghai in May 1990. The couple maintained that they faced severe pressure, both at work and in study groups, to abort this pregnancy because the child would be Chen's second. They

2

secured a permit to have the child only after making payments (characterized by them variously as "fines," "gifts," and "bribes") to government family planning officials. They were also forced to sign agreements with both of their employers and with the local family planning office promising that they would not have any more children and that they would undergo sterilization. The couple was unable to produce copies of these agreements but did assert that in each case the agreements were kept on file by the person exacting the promise. Wei Kai Li testified that, after giving birth, she was able to avoid immediate sterilization because the difficulty of the birth precluded attempting the procedure, and because the "doctor kn[e]w" her. The couple did not explain how they were able to avoid sterilization during the remainder of their time in China.

Chen and Wei Kai Li's second child (Chen's third) was born in the United States in July 1993. The couple testified that there would be severe repercussions for them if they returned to China with another child. They speculated that they would be forced to undergo sterilization, imprisoned, professionally restricted, and severely fined. They also expressed generalized fears about what their American-born son's status would be if they were forced to return, claiming that his access to educational opportunities and housing would be limited. The couple pointed to the fact that they had already sent money back to China to pay fines associated with their older child, although Chen's testimony suggested that these were merely fees for the cost of the child's housing and education. Chen also submitted a 1995 report by Human Rights in China, which describes severe repercussions for some families in violation of China's "one child" policy, including beatings and forced surgeries.

The INS, in arguing that Chen has no objective basis for his fears of persecution, submitted a 1995 State Department report on conditions in China. The report indicates that although forced abortions and sterilizations still occur, these practices have been on the decline since the mid-1980's, and they are increasingly limited to rural areas. Instead, according to the report, the "one child" policy "relies on education, propaganda and economic incentives as well as more coercive measures, including psychological pressure and economic penalties." Furthermore, the report cites interviews with family planning officials from Shanghai--Chen and Wei Kai Li's home city--in which the

3

officials explained that couples returning from university study abroad with an additional child have been "excused" from paying any penalty or have paid only fees commensurate with the cost of housing and educating the child.

## II.

The Immigration and Nationality Act provides the Attorney General with discretion to grant asylum to any alien who is a "refugee." 8 U.S.C.A. § 1158(b) (West 1999). The Act defines "refugee" as a person unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C.A. § 1101(a)(42)(A) (West 1999).

Prior to 1997, the Board of Immigration Appeals consistently held that persecution under China's "one child" family planning policy was not persecution "on account of political opinion," and that victims of these policies were therefore not entitled to asylum, see In re Chang, Interim Decision 3107 (B.I.A. 1989); that holding was affirmed on review by the courts. See Chen v. INS, 95 F.3d 801 (9th Cir. 1996); Zhang v. Slattery, 55 F.3d 732 (2d Cir. 1995), cert. denied, 516 U.S. 1176 (1996); Chen Zhou Chai v. Carroll, 48 F.3d 1331 (4th Cir. 1995). Apparently in response to this interpretation, Congress amended the definition of "refugee" in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), effective April 1, 1997, to include those who had been persecuted under a coercive family planning program, or who legitimately feared such persecution:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be

4

> deemed to have a well founded fear of persecution on account of political opinion.

Pub. L. No. 104-208, § 601(a)(1), 110 Stat. 3009-689 (1996) (current version at 8 U.S.C.A. § 1101(a)(42)). Chen maintains that this amendment entitles him to refugee status because he has a well-founded fear that he will be forced to undergo an involuntary sterilization procedure or that he will be subject to persecution for his refusals to undergo such a procedure.

The "well founded fear of persecution" standard contains a subjective and an objective component. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31 (1987). An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (quoting Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir. 1987)). The objective element requires the asylum petitioner to show, with specific, concrete facts, that a reasonable person in like circumstances would fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals , 979 F.2d 995, 999 (4th Cir. 1992); MA v. INS, 899 F.2d 304, 311 (4th Cir. 1990). The applicant bears the burden of demonstrating eligibility for asylum. See 8 C.F.R. § 208.13(a)(1999); Gonahasa v. INS, 181 F.3d 538, 541 (4th Cir. 1999).

The immigration judge made no specific finding as to the subjective component. However, the judge found that Chen did not qualify for asylum under even the amended definition of "refugee" because he was unable to establish that his fears of persecution and involuntary sterilization are objectively reasonable. Dismissing Chen's appeal, the Board held that the immigration judge had properly relied on the State Department report that couples returning to Shanghai from university study abroad had been excused from any penalties. The Board found that Chen had failed to rebut this evidence.

We accord deference to the decisions of the Board and must uphold the Board's determination "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C.A. § 1105a(a)(4) (West 1994). Under this standard, a court can reverse only if the evidence presented was "so compelling that no rea-

5

sonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992). (Although IIRIRA repealed § 1105a, that standard applies here under IIRIRA's transitional rules because Chen was in deportation proceedings prior to April 1, 1997. See Pub. L. No. 104-208,§§ 306(b), 309(c), 110 Stat. 3009-612, 3009-625. We note that under the permanent rules a court must similarly give great deference to the Board's evidentiary findings. See 8 U.S.C.A. § 1252(b)(4)(B) (West Supp. 1999) ("the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary")).

III.

In amending the Immigration and Nationality Act, Congress included three additional classes of individuals in the definition of "refugee": 1) persons who had been forced to undergo an involuntary sterilization or abortion; 2) persons who had been persecuted for refusing to undergo such a procedure or for other resistance to a coercive population control program; and 3) persons who have a well-founded fear of being subjected to a coercive population control program. See 8 U.S.C.A. § 1101(a)(42). By including applicants with a "well founded fear" of persecution as a distinct category, Congress directed that an individual in fear of a population control program would be able to qualify for refugee status even in the absence of a showing of past persecution.

For applicants seeking refuge from China's "one child" policy, the statute thus requires the Board, and ultimately the courts, to make judgments about the state of enforcement of a policy with contours that have been only partially disclosed, in a vast and diverse society on another continent. Tellingly, the State Department report on China, offered by the INS here, records conflicting insights from informants, breaks down its analysis by province and region, and offers only tentative conclusions. The asylum applicant who has suffered no past persecution will often be at great remove from what we would ordinarily consider "concrete" evidence. Yet that applicant may nonetheless have an objectively well-founded fear of future persecution under the "one child" policy.

It does not appear that any other court has yet been asked to evaluate a claim of a well-founded fear of a coercive population control

6

program under the amended statute. However, courts have considered the quantum of evidence necessary to establish a well-founded fear of persecution on account of political opinion. In Cardoza-Fonseca, the Supreme Court rejected the INS's contention that the applicant must prove a "clear probability of persecution" if returned to his home country. 480 U.S. at 430. Rather, the Court explained, "[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." Id. at 431. We have never quantified precisely what is necessary to demonstrate a well-founded fear of persecution, cf. Montecino v. INS, 915 F.2d 518, 520 (9th Cir. 1990) (showing of 10% chance would be sufficient), but we have recognized that an individual can demonstrate such a fear by showing that a reasonable person in like circumstances would fear persecution. See Huaman-Cornelio, 979 F.2d at 999; MA, 899 F.2d at 311.

Asylum petitioners who have not suffered past persecution have been able to establish a well-founded fear of future persecution when they have offered some evidence that they would be individually targeted, because of their particular status or role in their home country, for persecution on one of the statutorily defined grounds. See Abankwah v. INS, 185 F.3d 18 (2d Cir. 1999) (applicant had well-founded fear of being subjected to female genital mutilation if returned to Ghana because of her designated role in a tribal practice); Mgoian v. INS, 184 F.3d 1029 (9th Cir. 1999) (member of prominent Armenian Kurdish-Muslim family had well-founded fear based on persecution of family members and escalation of anti-Muslim sentiment in post-Soviet Armenia); Velarde v. INS, 140 F.3d 1305, 1312 (9th Cir. 1998) (former bodyguard to Peruvian president's daughters had well-founded fear of persecution by Shining Path); Sotelo-Aquije v. Slattery, 17 F.3d 33, 37 (2d Cir. 1994) (vocal opponent of Shining Path had well-founded fear of being targeted for retribution). Similarly, an applicant can succeed in proving a well-founded fear of future persecution by producing documents indicating that a government agency or other organization has identified him as a particular target for persecution. See Ubau-Marenco v. INS , 67 F.3d 750, 758-59 (9th Cir. 1995) (judicial summons and decree issued for applicant under a Nicaraguan law commonly employed to suppress political dissent could establish that applicant had well-founded fear),

7

overruled on other grounds, <u>Fisher v. INS</u> , 79 F.3d 955 (9th Cir. 1996).

The "well founded fear" standard, however, does not require an asylum petitioner to show that he will be individually targeted, or "singled out," for persecution. <u>See</u> C.F.R. § 208.13(b)(2) (INS "shall not require the applicant to provide evidence that he or she would be singled out individually for persecution if . . . there is a pattern or practice . . . of persecution of a group of persons similarly situated" and the applicant establishes inclusion in such group). Thus, asylum petitioners have also been able to demonstrate a well-founded fear by showing that they belong to a broader class of individuals that has been subjected to systematic persecution. <u>See Kotasz v. INS</u>, 31 F.3d 847, 852 (9th Cir. 1994) ("Certainly, it would not have been necessary for each individual Jew to await a personal visit to his door by Nazi storm troopers in order to show a well-founded fear of persecution."); <u>see also Najafi v. INS</u>, 104 F.3d 943 (7th Cir. 1997) (applicant who became a Christian while on a student visa in the United States should be given opportunity to prove that, if returned to Iran, he would be subject to religious persecution as an apostate). The key for the applicant is to show the thorough or systematic nature of the persecution he fears.

Individual targeting and systematic persecution do not necessarily constitute distinct theories. Rather, an applicant will typically demonstrate some combination of the two to establish a well-founded fear of persecution. <u>See, e.g.</u>, <u>Angoucheva v. INS</u>, 106 F.3d 781, 789 (7th Cir. 1997) (Macedonian citizen of Bulgaria could establish well-founded fear by showing persecution of Macedonian community and her own visible role in Macedonian political advocacy group). "[T]he more egregious the showing of group persecution . . . the less evidence of individualized persecution must be adduced." <u>Kotasz</u>, 31 F.3d at 853. Conversely, a stronger showing of individual targeting will be necessary where the underlying basis for the applicant's fear is membership in a diffuse class against whom actual persecution is haphazard and rare.

Congress's amended definition of "refugee" instructs the INS to consider, as the underlying basis for the asylum claim at issue here, membership in an extraordinarily large and diffuse class of

8

individuals--persons subject to the coercive enforcement of China's "one child" population control policy. The Chinese government and its local agents, according to the State Department, impose these measures in a far from systematic way, and with decreasing frequency. As a result, an applicant must proffer some additional evidence that his fears of this policy are objectively reasonable. Unless the individual can offer persuasive evidence that, contrary to the State Department report, coerced abortions and sterilizations continue to systematically occur, he must come forward with some additional evidence of the risk posed by a return to China. For example, he must show that he has been individually targeted for coercive enforcement of the "one child" program or that he belongs to some subgroup, such as those residing in a particular province or region, against whom coercive enforcement of the "one child" program remains systematic.

In this case, viewing the administrative record as a whole, we must conclude that substantial evidence supports the Board's decision. Chen offered no evidence that seriously contested the findings of the State Department regarding the current enforcement status of the "one child" policy. Although the Human Rights in China report offered by Chen details horrific practices that continue to take place, the report does not contradict the State Department's conclusion that the practice of forced sterilization is uncommon and increasingly limited to rural areas. The Human Rights in China report does not present a picture of systematic persecution under the "one child" policy.

Chen has offered only limited evidence that he and Wei Kai Li would be specific targets for forced sterilization or other persecution. Chen and Wei Kai Li indicated that, during Wei Kai Li's first pregnancy, they faced significant pressure from employers and local officials to terminate the pregnancy. They were not, however, forced to undergo sterilization or subjected to other persecution at that time. Furthermore, they were both given permission to spend extended time abroad soon after the birth. If Chen had been able to offer evidence of the specific terms of the agreements that he and his wife allegedly signed during her first pregnancy, and if these terms had suggested that he would be individually targeted for involuntary sterilization or other persecution upon his return to China with an additional child, such evidence might well have been sufficient to support an applica-

9

tion for asylum. The bare testimony that they signed certain agreements (with undocumented provisions), however, is not sufficient.

The testimony of Chen and Wei Kai Li as well as the State Department report all suggest that Chen faces the possibility of monetary penalties upon his return to China. Although economic deprivation can constitute "persecution" under the Act, the deprivation must at least rise to the level of a "deliberate imposition of substantial economic disadvantage." Borca v. INS, 77 F.3d 210, 215-16 (7th Cir. 1996) (radiologist allegedly barred from assuming any government employment, except possibly as a farm laborer, could establish economic persecution) (citing Kovac v. INS, 407 F.2d 102, 105-07 (9th Cir. 1969)). Taken as a whole, the record does not compel the conclusion that Chen reasonably fears such disadvantage because of his decision to have a third child. At most, a reasonable factfinder would be compelled to conclude that Chen faces the objective possibility of incurring fees associated with the cost of housing and educating his son.

Moreover, while Chen has been unable to show that he would be at particular risk upon return to China, the INS has produced evidence suggesting that Chen belongs to a subgroup that has been treated with particular leniency under the "one child" policy--persons returning with an additional child from university study abroad. Chen has not persuasively rebutted this evidence. The decision of the Board denying refugee status must therefore be upheld.

The standard for withholding of deportation is more stringent than that for asylum eligibility. See Cardoza-Fonseca , 480 U.S. at 431-32. To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Chen has not established refugee status, he cannot meet the higher standard for withholding of deportation.

IV.

For the foregoing reasons, the judgment of the Board of Immigration Appeals is

AFFIRMED.