UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-2329

TJONG WEN TJEN,

Petitioner,

versus

ALBERTO R. GONZALES, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals. (A79-469-347)

Argued: May 25, 2006                    Decided: June 20, 2006

Before WILLIAMS and MICHAEL, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Petition denied by unpublished per curiam opinion.

**ARGUED:** Linda Hanten, HARRIGAN & HANTEN, P.C., Washington, D.C., for Petitioner. James A. Frederick, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Respondent. **ON BRIEF:** Cecil C. Harrigan, HARRIGAN & HANTEN, P.C., Washington, D.C., for Petitioner. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Respondent.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Tjong Wen Tjen, a native and citizen of Indonesia, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from the immigration judge's denial of his requests for asylum and withholding of removal. For the reasons stated below, we deny Tjen's petition for review.

I

Born on May 25, 1980, Tjen was nineteen years old when he arrived in the United States on July 8, 1999. He did not file his application for asylum and withholding of deportation until April 30, 2001.

In the declaration accompanying his application, Tjen, who claims he is a Christian of Chinese ethnicity, described how Christians of Chinese ethnicity are mistreated and discriminated against in Indonesia. In support of this allegation, Tjen submitted various reports prepared by the United States Department of State.

In his declaration, Tjen also described an alleged incident of violence in 1995. In his description of the event, Tjen stated that he and several other Indonesians of Chinese ethnicity were attacked by Muslim "Jihad[ists]." As a result of being kicked in the face by one of the "Jihad[ists]," Tjen's "lips were broken" and he bled from his nose and mouth. Tjen also stated that, at the

time of the attack, two policemen nearby refused to help, laughed, and left on their motorcycles.

In his declaration, Tjen described an alleged incident of violence in April 1999. He stated that, while he was attending a university, a note was placed on the windshield of his car that read "Beware Chinese." Later the same day, he received a phone call from an unknown caller who said "Beware Chinese!" The following day, another note was left on his windshield that read "Chinese roasted pig!" Later that night, Tjen received a telephone call at home from the same unknown caller as the previous night and the caller said "Are you ready to be roasted Chinese pig!"

A short time later, following his attendance at a lecture, Tjen was stopped in his car by three Muslim men. One of these men slashed his tire, while another broke a window. After being removed from his car, Tjen was forced to the ground and kicked by the men. As a result, Tjen's "belly was really hurt and blood started to come out [of his] mouth." Tjen was able to repel his attackers and escape. After this incident, Tjen decided to leave Indonesia and head to the United States.

Following a hearing on May 23, 2003, the immigration judge (IJ) issued a decision holding that Tjen's asylum application was untimely and that Tjen was not entitled to relief from the one-year limitations period. Accordingly, Tjen's request for asylum was denied. The IJ also denied Tjen's application for withholding of

removal, holding that the credible evidence in the record did not support the application.

Tjen sought review from the BIA. Before the BIA, Tjen claimed that his asylum application was timely because he was entitled to relief from the one-year limitations period for asylum applications. Tjen also claimed that he produced credible evidence in support of his application for withholding of removal. On September 24, 2004, the BIA dismissed Tjen's appeal. Tjen filed a timely petition for review.

II

Tjen first contends that the BIA erred when it concluded that his asylum application was untimely. We disagree.

Under the Immigration and Nationality Act (INA), any "alien who is physically present in the United States or who arrives in the United States . . . , irrespective of such alien's status, may apply for asylum." 8 U.S.C. § § 1158(a)(1). The alien may not apply for asylum "unless the alien demonstrates by clear and convincing evidence that the application has been filed within one year after the date of the alien's arrival in the United States." Id. § 1158(a)(2)(B). "An application for asylum of an alien may be considered, notwithstanding [the one-year limitations period], if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially

affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified." Id. § 1158(a)(2)(D). The term "extraordinary circumstances" is defined in 8 C.F.R. § 1208.4(a)(5) and includes a "[l]egal disability (e.g., the applicant was an unaccompanied minor or suffered from a mental impairment) during the 1-year period after arrival." 8 C.F.R. § 1208.4(a)(5)(ii).

Tjen entered the United States on July 8, 1999 and, thus, had until July 8, 2000 to file his asylum application, unless he qualified for relief from the one-year limitations period. Tjen did not file his application until April 30, 2001. Thus, the timeliness of his application turns on his qualification for relief from the one-year limitations period.

Tjen argued to the BIA that he was an "unaccompanied minor" for purposes of 8 C.F.R. § 1208.4(a)(5)(ii) and, thus, was entitled to relief from the one-year limitations period. The BIA rejected Tjen's argument and held that his asylum application was untimely.

We review legal questions determined by the BIA de novo, Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 278 (4th Cir. 2004), according substantial deference to the BIA's interpretation of the regulations it administers, DeOsorio v. INS, 10 F.3d 1034, 1038 (4th Cir. 1993). As long as the BIA's interpretation of the term "unaccompanied minor" is reasonable, we will not disturb it. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S.

837, 843 (1984) (noting that, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").[*]

The main hurdle in this case turns on the age portion of the term "unaccompanied minor." Tjen suggests that a "minor" is a person under the age of twenty-one. The argument is premised on the notion that the INA's definition of "minor" is synonymous with the INA's definition of "child." While neither the INA, nor its regulations, define "minor" for general purposes, a "child" is defined in the INA as a person under the age of twenty-one. See 8 U.S.C. § 1101(b)(1). The BIA concluded that a "minor" for purposes of the INA was a person under the age of eighteen.

In our view, the BIA's interpretation of the term "minor" is reasonable. First, the BIA reasonably concluded that when one

---

[*]In general, we are precluded from reviewing determinations concerning the one-year asylum bar. See 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2) [the provision providing the one-year limitations and possible exceptions].").  However, when the issue before the court involves solely a question of law, we have jurisdiction.  See 8 U.S.C. § 1252(a)(2)(D) ("Nothing in . . . any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."); cf. Ramadan v. Gonzales, 427 F.3d 1218, 1222 (9th Cir. 2005) (explaining the distinction between issues of statutory construction and discretionary or factual questions).  In this case, whether the BIA's interpretation of the term "an unaccompanied minor" is reasonable presents a question of law.

compares those provisions of the INA that use the term "child" (8 U.S.C. §§ 1101(a)(15)(E), (I), (N), (O), (P), (R), (T), (U), & (V)) with those provisions that use the term "minor child" or "minor children" (8 U.S.C. §§ 1101(a)(15)(F), (H), (J), (K), (L), (M), & (Q)), Congress could not have meant for "child" and "minor" to be synonymous. Second, although the term "minor" is not defined for general purposes of the INA, it is defined as a person under the age of eighteen for purposes of determining whether an alien is inadmissible for being unlawfully present in the United States, see 8 U.S.C. § 1182(a)(9)(B)(iii)(I). Obviously, the BIA was free to reasonably rely on the definition of "minor" in a discrete portion of the INA. Finally, the BIA reasonably relied on the fact that an alien who has attained the age of eighteen is legally competent to apply for relief and benefits on his own behalf. In sum, because the BIA's interpretation of the statutes is reasonable, we are not at liberty to disturb that interpretation.

Turning to Tjen's application for withholding of removal, we begin by noting that there are no timeliness concerns regarding this alternative ground for relief. See Xiao Ji Chen v. U.S. Dep't of Justice, 434 F.3d 144, 155 (2d Cir. 2006) (noting that "eligibility for withholding of removal is not subject to 8 U.S.C. § 1158(a)(2)(B)'s one-year bar" and, thus, must be considered regardless of the timeliness of the petitioner's asylum application). Accordingly, we must uphold the BIA's determination

regarding Tjen's ineligibility for withholding of removal if the decision is supported by substantial evidence in the record considered as a whole. Rusu v. INS, 296 F.3d 316, 324 n.14 (4th Cir. 2002).

To qualify for withholding of removal, Tjen must demonstrate that, if he were deported to Indonesia, he faces "a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." Id. at 324 n.13. This is a more stringent standard than that for asylum. Chen v. INS, 195 F.3d 198, 205 (4th Cir. 1999). Unlike the grant of asylum (where an alien is entitled to remain in the United States), withholding of removal merely bars the deportation of an alien to a particular country. INS v. Aguirre-Aguirre, 526 U.S. 415, 419 (1999). Further, while the grant of asylum is discretionary, if an alien establishes eligibility for withholding of removal, the grant is mandatory. Id. at 420.

In this case, the BIA did not err when it concluded that Tjen was not entitled to withholding of removal. First, the isolated incidents that resulted in minimal harm to Tjen clearly do not rise to the level of persecution. See Li v. Gonzales, 405 F.3d 171, 177 (4th Cir. 2005) (noting that minor beatings do not amount to persecution). Second, Tjen's father, mother, and sister continue to live in Indonesia without meaningful incident. Cf. Lie v.

Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) ("We agree that when family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of persecution is diminished."). Third, we simply cannot take issue with the BIA's finding that, considering the current conditions in Indonesia, Tjen would not be persecuted on account of his ethnicity or religion. Thus, we cannot disturb the BIA's conclusion that Tjen failed to establish that, if he were deported to Indonesia, there was a clear probability that he would be persecuted.

III

For the reasons stated herein, the petition for review is denied.

PETITION DENIED