UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1225

BENASE LUFUA LUA NZAMBI,

Petitioner,

versus

ALBERTO R. GONZALES, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals. (A96-097-211)

Argued: May 24, 2006                    Decided: July 14, 2006

Before WILKINSON, TRAXLER, and GREGORY, Circuit Judges.

Petition denied by unpublished per curiam opinion.

**ARGUED:** Jacqueline Emanga Ngole, Rockville, Maryland, for Petitioner. Dennis Carl Barghaan, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Respondent. **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Respondent.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Benase Lufua Lua Nzambi petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We deny the petition for review.

I.

Nzambi, a citizen of the Democratic Republic of the Congo ("DRC"), entered the United States on October 22, 2001, as a nonimmigrant visitor with permission to remain until April 21, 2002. She overstayed her visa, however, and thus became subject to removal pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). See 8 U.S.C.A. § 1227(a)(1)(B) (West 2005). The Department of Homeland Security ("DHS") charged Nzambi with remaining in the United States longer than authorized, in violation of INA § 237(a)(1)(B), and placed her in removal proceedings. Nzambi conceded removability but sought asylum, see 8 U.S.C.A. § 1158(a)(1) (West 2005), withholding of removal, see 8 U.S.C.A. § 1231(b)(3) (West 2005), and relief under the Convention Against Torture ("CAT"), see 8 C.F.R. § 208.16(c) (2006).

In her application for asylum and withholding of removal, Nzambi asserted that the Congolese government had persecuted her because of her political opinion and her religion. Nzambi asserted that government agents arrested her on August 8, 2001, as a result

of her attendance at a meeting of the Union for Democracy and Social Progress ("UDSP"), a political party opposed to the regime of Joseph Kabila. Nzambi's alleged detention lasted for one week, after which time she was released on the condition that she refrain from participating in further UDSP functions.

Nzambi claimed she was arrested for a second time on September 13, 2001, approximately five weeks before she arrived in the United States. According to Nzambi's supporting affidavit, the arrest occurred during a meeting at her church, the New Jerusalem, in Kinshasa. Nzambi claims the government believed that she and various other church members were using the New Jerusalem as a front for UDSP activities. Nzambi was arrested along with her pastor and a deacon of the church for "'threatening the security of the state' . . . by distributing flyers that request the members of the church to participate in a[n] uprising of the population." J.A. 46. Nzambi claimed to have suffered "cruel and degrading treatment" during her six days of detention, including "tortures, threats, [and] life threats." J.A. 46. She was released "on parole" with her fellow church members and was required to report weekly to the police. Nzambi also claims she was forbidden to participate in further political or religious meetings.

On October 21, 2001, several weeks after her release from detention, Nzambi departed for the United States with a non-

immigrant visa she obtained from the American Embassy in the DRC.[1]
In her supporting affidavit, Nzambi stated that she applied for a
United States visa "[b]ecause of the threats I had received from
the ANR agents before my arrest." J.A. 47. Subsequently, at the
hearing before the immigration judge, Nzambi confirmed that she
obtained her visa and passport prior to either of her arrests. She
did not elaborate, however, on the nature or details of the alleged
pre-arrest threats.

Nzambi also claimed persecution based upon her membership in
a particular social group. Nzambi's supporting affidavit explained
that her father, Dr. Lufwa, had been an active member of the UDSP
in the early 1990s. In September 1992, when Nzambi was eighteen
years old, Dr. Lufwa was allegedly killed by forces loyal to the
Mobutu regime, which was no longer in control of the government at
the time of the incidents identified by Nzambi in her application
for relief.[2]

---

[1]According to Nzambi, she needed permission from government
security agents before she could leave the country. She claims she
was able to depart only because her uncle bribed airport officials.

[2]The Mobutu regime held power in the DRC -- known then as
Zaire -- from 1965 to 1997. In 1997, Laurent-Desire Kabila wrested
control of the government from Mobutu, and the UDSP opposed
Kabila's government as well. Kabila was assassinated in January
2001, but his son, Joseph Kabila, retained power and, according to
the State Department, continued the previous regime's practice of
using "security forces" to arbitrarily detain political opponents,
including members of the UDSP. J.A. 17; see also Mulanga v.
Ashcroft, 349 F.3d 123, 127-29 (3rd Cir. 2003).

At the hearing before the immigration judge, Nzambi supplied the following additional information. She testified that her problems with the government stemmed from her status as a church member and UDSP supporter. As church secretary, Nzambi created letters and tracts for the church in which she suggested that the government was not properly caring for DRC citizens. In support of her claim, Nzambi submitted a church membership card.

Nzambi also elaborated upon her detention following her arrest on September 13, 2001. She testified that she was beaten every day and that, on her final day of detention, she was raped. Upon her release, she received treatment for her back at a private residence in order to avoid authorities. Nzambi also indicated that her pastor remained in the DRC, where he was harassed and eventually killed. At the hearing, Nzambi introduced a letter ostensibly from her pastor verifying that she was a church member, claiming that the church faced serious threats, and suggesting that Nzambi's life would be in danger if she returned to the DRC.

Nzambi submitted a generic UDSP membership card and a certificate from a UDSP seminar. She also supplied a UDSP membership card bearing her name and photograph and indicating she contributed in 1999 and 2000.[3] Additionally, Nzambi offered a

---

[3]Although Nzambi testified that she became an official UDSP member in 2000, she explained that she had taken part in many UDSP activities and had supported the UDSP before that time. Hence, the card reflected her contribution in 1999.

5

letter from the Secretary General of the UDSP confirming her party membership and indicating she had been arrested and had suffered non-specific abuses at the hands of the government. Finally, Nzambi submitted a letter from the President of the UDSP branch located in the United States, stating that Nzambi was an active member.

Nzambi further introduced a written statement from her uncle indicating that Nzambi was involved with the UDSP and that she traveled to the United States for her protection. The statement indicated that Nzambi was arrested, but it failed to supply specific details. Moreover, this statement did not mention the assistance Nzambi's uncle purportedly gave her to obtain a visa and to leave the DRC. Additionally, Nzambi submitted documents purporting to be a summons for her arrest, dated September 13, 2001, and an order authorizing her arrest, dated September 20, 2001. The order of authorization purports to have been issued after her release from detention.

The immigration judge denied relief, concluding that Nzambi's testimony was not credible and that she did not provide sufficient corroborative evidence of her claims. The immigration judge explained that, although Nzambi claimed that she applied for an American visa "[b]ecause of the threats I had received from the ANR agents before my arrest," J.A. 47, the actual "impetus that caused [Nzambi] to leave her country were [the] two alleged arrests and

6

detention[s]," J.A. 54. First, the immigration judge noted that there was no testimony or other corroborative evidence explaining or verifying the threats that allegedly drove Nzambi to obtain the visa. Second, it appears from the record that Nzambi received her visa prior to her arrests but did not depart for the United States until after the arrests. The immigration judge rejected as implausible Nzambi's explanation that an arrest warrant was issued for her on the day of her release from prison and that she was able to leave only after payment of a bribe. The judge noted that there was no evidence suggesting Nzambi was in hiding to avoid the execution of the warrant or why the warrant was not executed in the six weeks between Nzambi's release from prison and departure for the United States. Also, the immigration judge noted that Nzambi claimed that one of the conditions of her release was to report on a regular basis to the authorities – had an arrest warrant been outstanding, it seemed unlikely that Nzambi would avoid arrest when reporting to authorities regularly. The statement from Nzambi's uncle was likewise not helpful to the immigration judge in that it failed to corroborate the bribe or supply specific details about her arrests or the pre-arrest threats she received. Finally, the judge viewed various documents submitted by Nzambi "with suspicion." J.A. 56. In particular, the immigration judge found that the summons and arrest warrant did not appear to be genuine.

Based on these findings, the immigration judge concluded that Nzambi failed to satisfy the burden of proof required for asylum, withholding of removal or protection under the CAT.

The BIA adopted and affirmed the denial of relief by the immigration judge, finding that Nzambi failed to meet her burdens of proof for all three forms of relief. The BIA found that the decision of the immigration judge "properly addresses the material inconsistencies in [Nzambi's] testimony, the lack of reliable corroborating evidence, and [Nzambi's] failure to adequately explain implausibilities in the record." J.A. 68.

Nzambi petitions this court for review of the BIA's denial of relief, raising two primary challenges to the decision below. First, Nzambi contends that the adverse credibility determination by the immigration judge, which the BIA affirmed, was not supported by substantial evidence. Second, Nzambi argues that the immigration judge failed to conduct an independent and meaningful analysis of her claim for relief under the CAT. We deny the petition for review.

II.

Under the INA, the Attorney General and the Secretary of Homeland Security are authorized to confer asylum on a refugee. See 8 U.S.C.A. § 1158(b) (West 2005). To qualify as a refugee pursuant to the INA, an alien must be unwilling or unable to return

to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West 2005). The "well-founded fear of persecution" standard includes both subjective and objective components. The subjective component requires that the applicant "present[] candid, credible, and sincere testimony demonstrating a genuine fear of persecution." Chen v. United States I.N.S., 195 F.3d 198, 201 (4th Cir. 1999) (internal quotation marks omitted). The objective component requires "specific, concrete facts[] that a reasonable person in like circumstances would fear persecution." Id. at 202. The applicant for asylum bears the burden of proving refugee status. See 8 C.F.R. § 1208.13(a). Furthermore, even if the applicant establishes refugee status, the decision to confer asylum is still within the discretion of the attorney general. See INS v. Aguirre-Aguirre, 526 U.S. 415, 420 (1999). With respect to withholding of removal, an applicant's burden for establishing eligibility is even more stringent than for asylum. To qualify for withholding of removal, the applicant must establish a "clear probability of persecution." INS v. Stevic, 467 U.S. 407, 430 (1984) (internal quotation marks omitted). However, when an alien establishes eligibility for withholding of removal, the grant of relief is mandatory. See Aguirre-Aguirre, 526 U.S. at 420.

The scope of review of a final order of removal denying asylum is narrow.  We may not disturb the BIA's decision on asylum eligibility unless it is "manifestly contrary to law and an abuse of discretion."  8 U.S.C.A. § 1252(b)(4)(D) (West 2005); see Saldarriaga v. Gonzales, 402 F.3d 461, 465 (4th Cir. 2005), cert. denied, 126 S. Ct. 1330 (2006).  When the denial of asylum is based on the conclusion that the applicant failed to meet her evidentiary burden, then our review is for substantial evidence and we must affirm the BIA's decision unless the evidence is "so compelling that no reasonable factfinder could fail to find" eligibility for asylum.  INS v. Elias-Zacarias, 502 U.S. 478, 484 (1992).  In conducting this review, we must accord great deference to the underlying factual findings of the BIA, which "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C.A. § 1252(b)(4)(B).  We likewise defer to credibility findings that are supported by substantial evidence. See Gandziami-Mickhou v. Gonzales, 445 F.3d 351, 354 (4th Cir. 2006).  Finally, a court may not "reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."  8 U.S.C.A. § 1252(b)(4).

Nzambi argues that substantial evidence does not support the immigration judge's refusal to credit certain assertions Nzambi

10

made during the course of her asylum proceedings. For example, Nzambi argues that it was error for the immigration judge to suggest that Nzambi's testimony about the purported reason she fled her country was implausible and filled with discrepancies. Nzambi notes that her testimony in no way contradicted her application for asylum in which she claimed to have decided to flee based on threats she received prior to her arrests and detention. Yet, the immigration judge concluded that "[i]t appears from the record that the impetus that caused [Nzambi] to leave her country were [the arrests and detention]." J.A. 54. This reasoning, claims Nzambi, was nothing more than the immigration judge's personal speculation about her motives which was unsupported by any testimony or other evidence in the record.

Unfortunately for Nzambi, the immigration judge specifically addressed the alleged pre-arrest threats as a basis for her leaving the DRC, and he found that there was essentially no evidence explaining these threats. See Chen, 195 F.3d at 202 (applicant must offer "specific, concrete facts" in support of her claim) (emphasis added). In light of the absence of evidence, we of course cannot conclude that a reasonable factfinder would be compelled to make a finding contrary to that of the immigration judge.

Nzambi also contends that, contrary to the findings of the immigration judge, there was nothing implausible about the date the

11

arrest warrant was issued or the failure of the authorities to arrest Nzambi prior to her departure to the United States. She argues that the immigration judge's conclusion was rooted in unsupported assumptions about the Congolese justice system. See Camara v. Ashcroft, 378 F.3d 361, 369 (4th Cir. 2004) (explaining that unsupported assumptions about foreign judicial procedure is inadequate to justify an adverse credibility finding).

Nzambi's argument is misplaced. The immigration judge was not making assumptions about the justice system in the DRC; rather, he was simply attempting to make sense of Nzambi's claim that an arrest warrant was issued for her on the same day that she was released and told to report regularly. This testimony, coupled with Nzambi's testimony that authorities never attempted to arrest her despite the weekly appearances, is sufficient to support the immigration judge's finding of implausibility.

Finally, Nzambi disagrees with the factual findings of the immigration judge to the extent he found the corroborating evidence to be insufficient. In particular, Nzambi argues that the judge improperly discounted the written statement of her uncle because there was nothing in it that was inconsistent with her claims. However, the immigration judge was not bothered by the discrepancies, but by the lack of corroborative details from a relative who was heavily involved in Nzambi's flight from the DRC. Indeed, Nzambi indicated that her uncle knew about her arrests and

12

detention, helped her obtain her visa, and bribed airport officials on her behalf. Nevertheless, the statement from her uncle only addressed her relationship with the UDSP; it was silent as to the facts of Nzambi's arrests, detention, and flight from the DRC.

We also conclude that a reasonable trier of fact would not be compelled to disagree with the immigration judge's assessment that the arrest warrant and related documents were not genuine and authentic, based on a finding that the letterhead was a xeroxed reproduction but the body of each document was in an "original format." J.A. 56.

In sum, we affirm the decision to deny relief, having identified no evidence "so compelling that no reasonable factfinder could fail to find" the required elements. Elias-Zacarias, 502 U.S. at 484.

## III.

Nzambi also contends that the immigration judge failed to conduct an independent, separate evaluation of the evidence and testimony under the standards of the CAT, as required by Camara. See 378 F.3d at 371. Relief from removal under the CAT requires the applicant to show that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. See 8 C.F.R. § 1208.16(c)(2). In this context, "torture" is defined as follows:

13

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining . . . information or a confession, punishing him . . . for an act he . . . committed or is suspected of having committed, or intimidating or coercing him . . . , or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of . . . a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). Unlike a claim for asylum, the applicant need not establish the reason for the torture under the CAT or that he has a well-founded fear of such torture. See Camara, 378 F.3d at 371. Significantly, "[b]ecause there is no subjective component for granting relief under the CAT, [an] adverse credibility determination [used to reject an asylum claim] would not necessarily defeat [a] CAT claim." Id. Even if the immigration judge determines that the applicant's testimony is not credible, a CAT claim may still succeed where the applicant has submitted independent evidence from which a factfinder could conclude that torture is more likely than not upon a return to the proposed country of removal. See id. at 371-72.

We review the denial of a claim for relief under the CAT for substantial evidence. See Rashiah v. Ashcroft, 388 F.3d 1126, 1131 (7th Cir. 2004). Relying on Camara, Nzambi contends that the immigration judge did not consider all of the relevant evidence and simply resolved her CAT claim based on the adverse credibility determination used to deny her asylum claim. We cannot agree. Although the immigration judge did not separately discuss all of

14

the evidence and testimony as relating to the asylum and CAT claims, it is readily apparent that the judge applied the proper standards for a CAT claim and did not reject the claim based solely upon an adverse credibility finding with respect to Nzambi's testimony and supporting affidavit.

Indeed, the decision below touches on virtually all of the documentary evidence supplied by Nzambi in support of all of her claims. Such evidence included UDSP membership documents, the arrest warrant and related documents, and the State Department country report for the DRC in 2002 which indicated that the government still targeted UDSP members for harsh treatment. Except for the State Department's Report, the immigration judge gave specific and cogent reasons for rejecting each evidentiary item. And the country report, in and of itself, does not satisfy the proof required for relief under the CAT. See Zubeda v. Ashcroft, 333 F.3d 463, 478 (3rd Cir. 2003). Although the report is evidence that UDSP party members were still at risk in 2002 for treatment that could amount to torture, something more specific is needed than party membership to show Nzambi is more likely than not to be tortured were she to return to the DRC.

Accordingly, we conclude that sufficient independent consideration was given to Nzambi's CAT claim and that the immigration judge did not deny the claim solely based on credibility findings. We conclude that substantial evidence

15

supports the conclusion that Nzambi failed to satisfy the more likely than not standard required for relief under the CAT.

IV.

For the reasons set forth above, we deny the petition for review.

PETITION DENIED