**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1548**

ROBERT ZEPHYR FOSSO,

     Petitioner,

  v.

JEFFERSON B. SESSIONS III, Attorney General,

     Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: May 9, 2017             Decided: July 18, 2017

Before DIAZ, FLOYD, and THACKER, Circuit Judges.

Petition for review denied by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Floyd and Judge Thacker joined.

**ARGUED:** Ronald Darwin Richey, LAW OFFICE OF RONALD D. RICHEY, Rockville, Maryland, for Petitioner. Gerald M. Alexander, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Linda S. Wernery, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Robert Zephyr Fosso, a native and citizen of Cameroon, applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), asserting that he suffered persecution in Cameroon because he is a founding member of a gay-rights advocacy group. The Immigration Judge denied all forms of relief and the Board of Immigration Appeals ("BIA") affirmed.

Before us, Fosso contends that he was improperly denied relief based on an erroneous adverse credibility determination. Alternatively, Fosso asserts that independent evidence exists to establish that he suffered past persecution in Cameroon and that he is entitled to protection under the CAT.

For the reasons stated below, we uphold the Immigration Judge and BIA's adverse credibility finding and denial of all relief as supported by substantial evidence and not manifestly contrary to law.

I.

Fosso arrived at the Otay Mesa, California port of entry without a visa on April 30, 2013. An officer of the Department of Homeland Security ("DHS") interviewed Fosso at the border, where Fosso requested admission to the United States based on his fear of returning to Cameroon. An asylum officer subsequently determined that Fosso demonstrated a credible fear of persecution in Cameroon.

DHS commenced removal proceedings against Fosso in May 2013 by issuing a Notice to Appear. Fosso conceded his removability but sought asylum, withholding of

2

removal, and protection under the CAT. The Immigration Judge issued an oral decision denying Fosso relief, finding that Fosso was not credible due to multiple inconsistencies between his testimony before the Immigration Judge, his written application for relief, and his statements during the border and credible-fear interviews. Fosso appealed to the BIA, which upheld the Immigration Judge's decision and dismissed Fosso's appeal.

Before assessing the bases for these decisions, we detail relevant testimony and supporting materials from Fosso's interviews, written application for relief, and the hearing before the Immigration Judge.

A.

Border Interview

During the border interview, Fosso told the DHS officer that he was "persecuted by people [and] . . . harassed by the police" in Cameroon because he founded an association in 2009 that defended the rights of homosexuals. J.A. 224.[1] Fosso told the officer that he had never been arrested.

Fosso also described his journey from Cameroon to the United States, explaining that he left Cameroon without a passport and travelled to Nigeria via public transportation. From Nigeria, Fosso traveled via ship to Spain where he obtained a passport from a man named Patrick in order to fly to Ecuador. From Ecuador, Fosso made his way to the United States border by car.

---

[1] In Cameroon, consensual same-sex sexual activity is illegal and punishable by a prison sentence of six months to five years and a fine ranging from 20,000 to 200,000 CFA francs (approximately $41 to $410).

3

<u>Credible-Fear Interview</u>

Fosso subsequently underwent a credible-fear interview with an asylum officer. When the officer asked Fosso about the conditions in the detention facility, Fosso replied, "The first day was really hard because I've never been in prison before." J.A. 398.

Fosso told the officer that he left Cameroon after "receiv[ing] many threats" beginning in 2012 because of his participation in a group named "Rights for All," which he founded in 2009 to advocate for gay rights. J.A. 399–400. While Fosso himself is not gay, he told the asylum officer that his brother is, and that Cameroonian society's mistreatment of homosexuals encouraged him to become involved in the gay-rights movement.

When the asylum officer asked if anyone ever threatened to physically harm him, Fosso replied, "Yes, but they mostly threatened to harm my wife and children." J.A. 401. When the asylum officer asked if anyone in Cameroon ever physically harmed him, Fosso replied that he "actually exchanged blows before leaving the country," explaining that he was physically assaulted four times but did not suffer any injuries. J.A. 400. Fosso did not provide additional details about these altercations.

Fosso described three significant events during the credible-fear interview. First, Fosso told the officer that the printing business he owned in Cameroon and used to print materials for Rights for All was burned down the day after he organized a demonstration. Second, Fosso told the asylum officer that the police in Cameroon "approached [him] and asked [him] to abandon the protest," or be subject to imprisonment. J.A. 401. And third, Fosso stated that he received two summonses from the police, the first putting Fosso on

4

notice about the illegality of his activities with Rights for All and the second directing that Fosso go to court for trial.

Application for Relief and Supporting Documents

Fosso filed a Form I-589 application for asylum, withholding of removal, and protection under the CAT. In support of his application for relief, Fosso submitted a sworn affidavit, wherein he stated for the first time that he was arrested by Cameroonian police on two different occasions.

The affidavit recounts the following. Fosso was first arrested at a Rights for All rally in February 2011. The police detained Fosso and others in a detention facility, where they were kept in a dark cell, interrogated, stripped, and beaten by the police with a rod. Fosso was released after several days at the request of a fellow activist's high-ranking father but authorities told Fosso that "they weren't finished with [him]," and issued him a summons to return. J.A. 351.

Fosso was arrested a second time in May 2012 during a Rights for All group meeting and was taken with other activists to a police station. Fosso was kept for three days in a small cell with insufficient food but was not beaten by the police. The police asked Fosso and the other detained activists to sign a pledge that they would no longer advocate for gay rights in exchange for their release; Fosso refused to sign, but was released nonetheless. Days after his release, a second summons arrived at Fosso's business warning him to stop printing any materials promoting gay rights.

Fosso's affidavit also stated that the police visited his family home in January 2013 and spoke to his wife and sister-in-law. Fosso sent his wife and son to hide with his

5

mother, and Fosso fled to Douala, where he stayed until he learned from a Rights for All member that his printing business had burned down in February 2013. In contrast to his statement to the DHS officer, Fosso said in the affidavit that he subsequently travelled from Nigeria to Ecuador using his twin brother's passport, which he returned to his brother once he reached Mexico.

In support of his application for relief, Fosso submitted several documents: a statement by a Cameroonian professor and political activist indicating his knowledge of Fosso's gay-rights activism and speaking generally about human rights violations in Cameroon; a summons for Fosso's arrest; news articles about the treatment of gay-rights activists in Cameroonian prisons; a magazine advertisement for Fosso's printing business; and the 2012 and 2013 State Department Country Reports for Human Rights Practices for Cameroon.

Fosso also submitted the affidavits of his wife, his sister-in-law, his neighbor, a fellow Rights for All member, and his lawyer. These affidavits provided vague and varying accounts as to what happened to Fosso before he left Cameroon. The affidavit of Fosso's wife stated that she co-founded Rights for All with Fosso and that they were together "several times arrested[,] detained[,] and tortured" because of their activism. J.A. 251. Another Rights for All co-founder stated that the police tortured members of the group several times and burned down their headquarters. Fosso's lawyer stated that that he "intervened in [Fosso's] several arrests . . . and obtained bail for his temporary release from police custody," and that Fosso remains a "wanted person" in Cameroon.

6

J.A. 266.  Fosso's sister-in-law and neighbor, by contrast, said only that the police arrived at Fosso's home with a summons to arrest Fosso but failed because he escaped.

## Merits Hearing before the Immigration Judge

During the hearing before the Immigration Judge, Fosso testified about the two arrests mentioned in his affidavit.  In contrast to his affidavit, Fosso told the Immigration Judge that he was beaten "[v]ery much" when he was arrested the second time.  J.A. 135.  Fosso also testified about his printing business and told the judge that he did not have any specific evidence (beyond his suspicion) that his business was burned down because of his involvement in gay-rights advocacy.

The Immigration Judge asked Fosso why the affidavits of Fosso's family and friends failed to provide consistent and specific details, including dates of arrests, how many times Fosso was arrested, and whether they observed any injuries on Fosso after these arrests.  Fosso replied that the affidavits were only "general outline[s]" because his friends and family were afraid.  J.A. 138–39.  When questioned about why he did not tell the asylum officer about being arrested and detained twice by Cameroonian officials, Fosso responded vaguely, "I am in a place where I do not know about.  And to that effect, I just responded to the question asked of me."  J.A. 189–90.  When questioned about why Fosso told the DHS officer that he traveled from Spain to Ecuador using the passport of a man named Patrick in contrast to his testimony that he used his brother's passport, Fosso explained that he did not want to endanger his brother's life by telling the truth about the source of the passport.  Finally, when questioned about why Fosso's affidavit

contradicted his testimony that he was beaten by the police during his second detention, Fosso responded, "maybe [the affidavit is] an error." J.A. 194.

Guy Chengjay, Fosso's nephew, testified on his behalf. Chengjay testified that he had not been to Cameroon since 2006, and that he learned about Fosso's alleged persecution in Cameroon from Fosso over the phone.

B.

At the close of the hearing, the Immigration Judge issued an oral decision denying Fosso's application for relief. Citing "the various inconsistencies of [Fosso] on material, as well as non-material, parts of his testimony in comparison with answers previously given to an asylum officer, to the [i]mmigration officer[,] and in his own statement," the judge found Fosso not credible and therefore denied Fosso's application for asylum and withholding of removal. J.A. 67. The judge identified the following inconsistencies in Fosso's statements:

- Fosso testified that when he was arrested a second time in May 2012, he was interrogated and beaten. His affidavit, however, stated explicitly that he was not beaten during this second arrest.

- Fosso's testimony detailed two arrests by police and the interrogation and beatings he underwent while detained. During his credible-fear interview, however, Fosso never stated that he was arrested, saying that people in Cameroon "mostly threatened to harm my wife and children." J.A. 65.

- Fosso testified that he received two summonses from Cameroonian authorities and that receipt of the second summons caused him to flee Cameroon. However, the summons Fosso provided to the court identified April 3, 2013 as the date of service, after Fosso had already left Cameroon.

- Fosso testified that he used his twin brother's passport to travel to Ecuador. However, Fosso told the DHS officer that a person named Patrick had given him his passport.

8

The Immigration Judge concluded in the alternative that even if Fosso were credible, Fosso did not qualify for asylum and withholding of removal because he failed to establish a nexus between his claim of past persecution and a protected ground for relief.

Finally, the Immigration Judge denied Fosso's request for relief under the CAT, citing again "the numerous inconsistencies" in Fosso's testimony and reasoning that "the closest thing to any specifics in the entire record" as to Fosso's alleged arrests and beatings in Cameroon came from Fosso's nephew, who had no personal knowledge about what happened to Fosso in Cameroon. J.A. 68.

The BIA dismissed Fosso's appeal. It upheld the Immigration Judge's adverse credibility determination as based on "specific, cogent reasons" and not clearly erroneous because the judge identified three key inconsistencies in Fosso's testimony: (1) Fosso told the asylum officer that people in Cameroon "mostly threatened [to harm] my wife and children," and failed to provide additional details; (2) Fosso presented an arrest summons that was delivered to Fosso's wife on April 3, 2013, a fact temporally "in conflict with [Fosso's] testimony that he fled to the countryside in Cameroon when a summons was delivered to his wife,"; and (3) Fosso told the DHS officer during the border interview that he had used the passport of a man named Patrick, but testified before the Immigration Judge that he used his twin brother's passport. J.A. 2–3.

The BIA agreed with the Immigration Judge that absent credible testimony, Fosso failed to establish his eligibility for asylum and withholding of removal. The BIA therefore declined to consider the Immigration Judge's alternative finding. Finally, the

9

BIA concluded that "[g]iven the absence of additional evidence," the judge properly denied Fosso's application for protection under the CAT because Fosso had not shown it was "more likely than not" that he would be subjected to torture upon removal to Cameroon.

Fosso subsequently petitioned for review.

## II.

### A.

We begin with an overview of the relief that Fosso seeks: asylum, withholding of removal, and protection under the CAT.

"The Immigration and Nationality Act ("INA") gives the Attorney General the discretionary power 'to grant asylum to aliens who qualify as refugees.'" *Ilunga v. Holder*, 777 F.3d 199, 206 (4th Cir. 2015) (quoting *Dankam v. Gonzales*, 495 F.3d 113, 115 (4th Cir. 2007)); *see also* 8 U.S.C. § 1158(b)(1)(A). To qualify as a "refugee," Fosso bears the burden of demonstrating that he is "unable or unwilling to return to" his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). "Applicants may satisfy this burden by showing either that they were subjected to past persecution or that they have a well-founded fear of future persecution on account of one of the enumerated grounds." *Hui Pan v. Holder*, 737 F.3d 921, 927 (4th Cir. 2013) (internal quotation marks omitted). "The 'well-founded fear of persecution' standard contains both subjective and objective components." *Gandziami-*

10

*Mickhou v. Gonzales*, 445 F.3d 351, 353 (4th Cir. 2006). The subjective component requires the applicant to "present candid, credible, and sincere testimony demonstrating a genuine fear of persecution." *Id.* (internal quotation marks omitted). "The objective component requires specific, concrete facts that a reasonable person in like circumstances would fear persecution." *Id.* (internal quotation marks omitted).

To qualify for the mandatory relief of withholding of removal, Fosso must satisfy a higher burden of proof than that for asylum. *Qing Hua Lin v. Holder*, 736 F.3d 343, 351 (4th Cir. 2013). He must establish that, if removed to a certain country, his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "An applicant for withholding must therefore show a 'clear probability of persecution,' and link that probability of persecution to one of the five grounds enumerated in the statute." *Singh v. Holder*, 699 F.3d 321, 327 (4th Cir. 2012). If an applicant cannot demonstrate asylum eligibility, his application for withholding of removal necessarily fails as well. *Djadjou v. Holder*, 662 F.3d 265, 272 (4th Cir. 2011).

Finally, to qualify for mandatory protection under the CAT, Fosso must demonstrate "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Fosso must therefore show that he will be subject to "severe pain or suffering, whether physical or mental . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1).

11

B.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal. Where, as in Fosso's case, the BIA adopts the Immigration Judge's decision and supplements it with its own reasons for affirming, we review both decisions as the final agency action.[2] *See Martinez v. Holder*, 740 F.3d 902, 908 (4th Cir. 2014).

"The scope of our review of a final order of removal denying asylum or withholding of removal is narrow." *Hui Pan*, 737 F.3d at 926 (internal quotation marks and alteration omitted). We must uphold the agency's decision to deny relief unless it is "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). We review the agency's factual determinations "only to ensure they are supported by substantial evidence." *Qing Hua Lin*, 736 F.3d at 350. "Substantial evidence exists to support a finding unless the evidence was such that any reasonable adjudicator would have been compelled to conclude to the contrary." *Id.* (internal quotation marks and alteration omitted).

Our review of the agency's adverse credibility finding is also "specifically limited to ensuring that substantial evidence supports it." *Ilunga*, 777 F.3d at 206. Although we afford broad deference to the agency's adverse credibility determination, "it must provide specific, cogent reasons supporting its decision." *Id.* (internal quotation marks and citations omitted).

---

[2] We refer to the BIA and Immigration Judge collectively as the "agency."

III.

Fosso contends that substantial evidence does not support the agency's adverse credibility determination and that he qualifies for asylum and withholding of removal. Fosso also argues that independent evidence in the record establishes that he suffered past persecution in Cameroon. Finally, he claims that he is entitled to protection under the CAT.[3] We address each issue in turn.

A.

Fosso's challenge to the agency's denial of his applications for asylum and withholding of removal center on the adverse credibility finding. He contends that the Immigration Judge failed to provide specific, cogent reasons for the finding and that the inconsistencies the judge identified in his testimony are too minor to support the adverse credibility determination. Having reviewed the decisions of the Immigration Judge and BIA and Fosso's testimony at all stages of the proceedings—which is replete with the "omissions, inconsistent statements, contradictory evidence, and inherently improbable testimony" that "are appropriate bases for making an adverse credibility finding," *Ilunga*, 777 F.3d at 207—we cannot agree.

---

[3] Fosso also challenges the Immigration Judge's alternative conclusion that, assuming credibility, Fosso failed to establish a nexus between his claim of past persecution and a protected ground for relief. But because the BIA declined to address this alternative finding in its decision, the issue is not properly before us. 8 U.S.C. § 1252(d)(1).

13

Pursuant to the REAL ID Act of 2005,[4] a credibility determination may be based on the trier of fact's consideration of the totality of the circumstances, including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements.

8 U.S.C. § 1158(b)(1)(B)(iii). Critically, an adverse credibility determination can be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *Id.* The REAL ID Act thus "allow[s] Immigration Judges to follow a commonsense approach while taking into consideration the individual circumstances of the specific witness and/or applicant." *Singh*, 699 F.3d at 329 (internal quotation marks omitted).

In this case, the agency properly considered the totality of circumstances and all relevant factors of Fosso's claim and provided "specific, cogent reasons" for the adverse credibility finding. Contrary to Fosso's assertions, the agency identified three substantial reasons for finding Fosso not credible.

First, Fosso testified during the merits hearing that he was arrested and detained twice by Cameroonian police, suffering beatings on both occasions. But in his border

---

[4] The credibility provision of the REAL ID Act of 2005 is applicable to all asylum or withholding of removal applications filed after May 11, 2005. *Singh*, 699 F.3d at 328; *see* 8 U.S.C. § 1158(b)(1)(B) (asylum); 8 U.S.C. § 1231(b)(3)(C) (withholding of removal). Fosso's application for relief was filed on January 14, 2014, and is therefore governed by this standard.

and credible-fear interviews, Fosso said nothing about these significant events, instead stating that people in Cameroon "mostly threatened to harm [his] wife and children." J.A. 401. Fosso's testimony about the beatings he endured during the second detention also contradicted his affidavit, wherein he swore that he was not beaten during his second detention.

Fosso exacerbated his credibility problem when he failed to adequately explain to the Immigration Judge why his accounts about these arrests varied. When the judge asked Fosso why he never told the DHS officer or the asylum officer that he'd been arrested, detained, and beaten, Fosso explained, "I just responded to the question asked of me." J.A. 189–90. Contrary to this assertion, the record shows that Fosso had numerous opportunities to explain that he'd been arrested and detained twice, suffering beatings both times. During the border interview, the DHS officer asked Fosso if he'd ever been arrested and encouraged Fosso to describe the kinds of problems he'd experienced in Cameroon. During the credible-fear interview, the asylum officer asked Fosso if anyone had ever harmed or threatened him, asked for specific details about how Fosso was threatened, and asked if the police were involved in any of the threats Fosso suffered. Despite these queries, Fosso did not mention his arrests. And, when the Immigration Judge asked Fosso why his testimony contradicted his written account, Fosso's only explanation was that "maybe [the affidavit is] an error." J.A. 194. We perceive no error in the Immigration Judge's unwillingness to accept Fosso's explanations for this substantial omission.

As a second basis for the credibility finding, the agency identified a serious inconsistency: Fosso's testimony that his wife's receipt of a summons for his arrest prompted his departure from Cameroon plainly conflicted with the face of the summons itself, which was served on Fosso's wife on April 3, 2013, months after Fosso fled to the United States. Finally, Fosso's varying account of his journey from Nigeria to the United States constitutes a third sufficient basis for the credibility finding, particularly where Fosso admitted to the Immigration Judge that he lied to the DHS officer about the source of the borrowed passport to avoid incriminating his brother.

Fosso alternatively posits that even if his testimony suffered from inconsistencies, the agency improperly based its credibility finding on the statements he made following the "extreme fatigue and stress" he experienced after walking through Mexico to the U.S. border. Pet'r's Br. at 9 n.1. We have cautioned against basing an adverse credibility determination solely on inconsistencies and omissions arising out of border or "airport" interviews. *Qing Hua Lin*, 736 F.3d at 352–53. Such interviews are not part of the asylum process, are conducted without legal representation, and are typically "given in the hours immediately following long and often dangerous journeys into the United States." *Id.* As such, requiring an alien to provide "precise evidentiary detail" about past persecution in his or her native country "places an unduly onerous burden on an alien who later seeks asylum." *Id.* at 353.

But in Fosso's case, the agency did not base its adverse credibility determination on "minor evidentiary detail[s] whose absence can be overlooked." *Id.* Instead, Fosso's alleged arrests, detentions, and beatings constitute "the very core of [his] claim," and his

16

failure to mention these events is fatal to his credibility. *Id.* Moreover, even if we were to disregard these omissions, the agency based its credibility determination on other testimonial inconsistencies beyond the statements Fosso made at the border. Fosso's vague and dubious explanations for these contradictions do not persuade us that the agency erred.

In sum, we are far from "compelled to conclude" that Fosso's testimony was credible. *See* 8 U.S.C. § 1252(b)(4). We therefore affirm the agency's adverse credibility finding as supported by substantial evidence.

B.

Although an adverse credibility finding is "likely to be fatal to an asylum claim" because the subjective element of the "well-founded fear of persecution" standard "cannot generally be proved other than through the applicant's testimony," an alien can still establish past persecution on a protected ground by presenting adequate objective evidence independent of his own discredited testimony. *Camara v. Ashcroft*, 378 F.3d 361, 369–71 (4th Cir. 2004) (internal quotation marks and alterations omitted). "In cases where the applicant can prove actual past persecution . . . a presumption arises that [he] has the requisite level of fear of persecution, and thus [he] need not prove the subjective component of 'well-founded fear.'" *Id.* at 369–70 (citing 8 C.F.R. § 208.13(b)(1)).

Here, however, the agency properly found that Fosso failed to establish eligibility for asylum and withholding of removal because Fosso did not provide sufficient independent evidence demonstrating past persecution. To begin with, the letters and affidavits from Fosso's family and friends—which in any event provide only vague and

17

inconsistent details about Fosso's experience in Cameroon—are not objective, independent evidence.[5]  *Djadjou*, 662 F.3d at 276.  Further, the agency appropriately declined to credit the testimony of Fosso's nephew regarding Fosso's experience in Cameroon, given the nephew's admission that all he knew of Fosso's alleged persecution in Cameroon was what Fosso told him over the phone.  *See id.* at 276–77.

The remaining record evidence—the summons for Fosso's arrest, news articles pertaining to the persecution of homosexual individuals in Cameroon, and the 2012 and 2013 State Department country reports for Cameroon—are insufficient to demonstrate that Fosso was persecuted in Cameroon for his work as a gay-rights activist.  Our decision in *Camara* provides a useful contrast.  In that case, we concluded that an alien submitted independent evidence that when "taken together, provided strong circumstantial evidence" that she suffered past persecution for political expression in opposition to the ruling government.  378 F.3d at 370.  There, "apart from [the alien's] somewhat discredited testimony," the alien offered the following to support her claim of past persecution: (1) a Notice of Escape documenting her escape from prison; (2) a membership card and letter establishing her membership in an opposition political party; (3) State Department reports recording the suppression of that specific political party; and

---

[5] The Immigration Judge incorrectly stated during the hearing that only Fosso's neighbor's affidavit noted that Fosso was arrested.  But because we agree with the judge that these affidavits contain only general and inconsistent assertions about Fosso's persecution in Cameroon, the error is harmless.

(4) an arrest warrant corroborating the alien's claim that she was arrested for participating in a political protest. *Id.*

The record evidence here falls far short of the independent evidence amassed by the applicant in *Camara*. As discussed, the summons provided by Fosso, served after he left the country, is suspect in light of his unreliable testimony. And the news articles and State Department country reports—which describe the harsh political and social environment for gay individuals in Cameroon—cannot establish that Fosso himself suffered past persecution.

In sum, we conclude that the agency's finding is supported by substantial evidence and is not manifestly contrary to law. We therefore affirm the agency's denial of Fosso's application for asylum and withholding of removal. *See id.* at 367 ("[A]n applicant who is ineligible for asylum is necessarily ineligible for withholding of removal . . . .").

C.

Fosso's final challenge is to the agency's denial of his request for protection under the CAT, which we review for substantial evidence. *Mulyani v. Holder*, 771 F.3d 190, 200 (4th Cir. 2014). Because an adverse credibility finding "cannot alone preclude protection under the CAT," Fosso may still succeed in obtaining this form of relief based on independent evidence from which a factfinder could conclude that torture is "more likely than not" to occur if he were removed to Cameroon. *Munyakazi*, 829 F.3d at 301 (internal quotation marks omitted).

Fosso relies on the 2012 and 2013 State Department country reports to establish his CAT claim. According to Fosso, these reports show that gay-rights activists like

Fosso "will be targeted and suffer further torture in Cameroon" and that Cameroonian authorities promote an "atmosphere of impunity" in which police fail to intervene in attacks on political activists. Pet'r's Br. at 28, 30. Fosso further asserts that the agency erred by failing to specifically address these State Department country reports when it considered his CAT claim.

We disagree. As an initial matter, "[w]e presume that, in reaching these conclusions, the [Immigration Judge] and the BIA reviewed the evidence presented to them and made their decisions based on the relevant evidence." *Martinez*, 740 F.3d at 914. Indeed, the Immigration Judge stated in his oral decision that he considered all the record evidence, including the testimony of Fosso's nephew and the exhibits Fosso attached to his application for relief in reaching his decision. And the BIA found that the absence of additional evidence in the record served to defeat Fosso's CAT claim. Given the agency's consideration of the record and the soundness of its finding, we decline to require the agency to specifically address each piece of evidence Fosso presented.

Moreover, although these State Department reports reflect that the government of Cameroon has engaged in abusive practices at the expense of its citizens, including by criminalizing consensual same-sex sexual activity, they fall short of establishing that Fosso himself would be targeted by these practices more than any other citizen. *See Nzambi v. Gonzales*, 190 F. App'x 212, 218 (4th Cir. 2006) ("[T]he [State Department] country report, in and of itself, does not satisfy the proof required for relief under the CAT.") (citing *Zubeda v. Ashcroft*, 333 F.3d 463, 478 (3d Cir. 2003)).

As such, Fosso has failed to establish that it is "more likely than not" that he will be tortured if removed to Cameroon, and the record evidence does not compel us to conclude otherwise. Accordingly, substantial evidence supports the agency's denial of Fosso's request for protection under the CAT.

*PETITION FOR REVIEW DENIED*